## Godshalk's Estate.

*Bond—Collateral security—Volunteers—Notice.*

With respect to a bond and a collateral security, it is settled that the bond is the principal debt in law, and must govern the rights of the parties between themselves. It must also govern as to the claims of volunteers, and they are affected by it without notice.

A grantor in a deed charged a portion of the purchase money on the land, the interest of which was to be paid to the grantor and his wife and the

survivor of them during their lives. Upon the death of the survivor the fund so charged was to be paid "to the legal heirs of the grantor, or to those legally entitled to the same." As a part of the transaction the grantee executed a bond to the grantor, conditioned for the payment of the fund after the death of the grantor and his wife "to the parties entitled to receive the same by his will." The deed was recorded, but the bond was not. *Held*, (1) that the bond was the principal debt and governed the rights not only of the parties, but also the grantor's heirs, who were volunteers ; (2) that it was immaterial that the heirs had no notice of the bond; (3) that the gift was but a provisional gift to the heirs subject to an implied power in the grantor to vest the title in others by will ; (4) that the beneficiaries under the grantor's will, and not his heirs, were entitled to the fund.

*Appeals—Assignments of error—Exceptions to adjudication—Practice.*

Where a large number of exceptions have been filed to an adjudication and all have been dismissed, it is improper to assign error as follows: "The court erred in making the decree that the exceptions should be dismissed and adjudication confirmed."

Argued Dec. 9, 1903. Appeal, No. 212, Oct. T., 1903, by Elias K. Kulp et al., from decree of O. C. Montgomery Co., dismissing exceptions to adjudication in estate of Jacob Z. Godshalk, deceased. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Exceptions to adjudication.

The facts are stated in the opinion of the Superior Court.

Thirteen exceptions were filed to the adjudication. All of these were dismissed.

*Error assigned* was in the following form : " The court erred in making the decree that the exceptions should be dismissed and adjudication confirmed."

*Edwin S. Nyce*, with him *John T. Wagner*, for appellants.— The deed and bond, appellants admit, were parts of one transaction, but the deed being of record within the time allowed by law, and the bond being never of record and no notice of the existence thereof being had by the appellants, who were third parties to the transaction, the bond must fall before the record of the deed: Eagle Beneficial Society's Appeal, 75 Pa. 226.

Nor were the appellants placed on inquiry as to the existence of the bond: Green v. Rick, 121 Pa. 130 ; Neale v. Dempster, 179 Pa. 569 ; Pyles v. Brown, 189 Pa. 164.

*Montgomery Evans*, with him *Albert R. Place* and *Henry M. Brownback*, for appellees.—No estate passes to any person under the designation of " heirs " of a living person : Darrah v. Darrah, 202 Pa. 492 ; Morris v. Stephens, 46 Pa. 200.

The cases of Neale v. Dempster, 179 Pa. 569, and Green v. Rick, 121 Pa. 130, cited by the appellants, declare the well-established law that a bond given for a debt is the primary · obligation, and the real estate pledged to secure it is secondary. The purpose of the charge in the deed was to secure the bond. It was the primary obligation.

OPINION BY SMITH, J., March 14, 1904 :

We might properly disregard the assignment, since it embraces the various points involved and errors alleged in thirteen exceptions to the opinion of the auditing judge, without specifying any of them. But as all these depend on the relation between the deed and the bond, from which the contest has arisen, we will dispose of the case by the determination of this question.

Jacob Z. Godshalk and Catharine his wife, by deed dated April 1, 1885, conveyed a tract of land to Frederick Seitz. At the same time Seitz paid one half of the consideration, and executed a bond to Godshalk for the residue. The condition of this bond was that Seitz "shall pay or cause to be paid unto the above named Jacob Z. Godshalk, his certain attorney, executors, administrators or assigns, the just sum of thirty-three hundred and twenty dollars, and three cents after the death of Jacob Z. Godshalk, and his wife, Catharine, to the parties entitled to receive the same, by his will, and the annual interest of said sum to Jacob Z. Godshalk during his life and after his death in case his wife, Catharine, survives him to her annually on the first day of April of each and every year during the term of the survivor of them or their natural life interest for above sum to be four and one fourth per cent (annual interest $141.10)." This indebtedness was also charged on the land by the following provision in the deed : "To have and to hold, etc. Under and subject to the payment of the annual interest at four and one quarter per cent per annum, on the principal sum of three thousand and three hundred and twenty dollars and three cents, to Jacob Z. Godshalk and

Catharine Godshalk, his wife, and the survivor of them, during the period of their natural lives. And after the decease of said Jacob Z. Godshalk and Catharine Godshalk, his wife, or the survivor of them, the said principal sum of three thousand three hundred and twenty dollars and three cents is to be paid to the legal heirs of Jacob Z. Godshalk or to those legally entitled to the same." On the same day Godshalk, by will, disposed of all his estate. The money paid by Seitz, after the death of Godshalk and wife, in discharge of his indebtedness, was, by order of the court below, distributed in accordance with the will. It is contended, by the appellants, that it should have been distributed to the heirs of Godshalk, in accordance with the deed.

The only parties to the transaction by which the debt of Seitz was created and secured were Godshalk, his wife, and Seitz. The heirs of Godshalk were in no sense parties to it; they derived no interest from it except by way of gift from him; and who were to be the beneficiaries of this gift could not be known until his death. With respect to a bond and a collateral security, it is well settled that "the bond is the principal debt in law, and must govern the rights of the parties between themselves: " Eagle Beneficial Society's Appeal, 75 Pa. 226. It must also govern as to the claims of volunteers, and they are affected by it without notice. Hence it is not material that the bond of Seitz was not entered of record, or otherwise brought to the knowledge of Godshalk's heirs. They are bound by the terms of the transaction, as a whole, as fully as the parties to it were bound.

There is, indeed, no substantial repugnancy between the bond and the deed. The condition of the bond is inartificially drawn, requiring, as it does, payment to the obligee, his executors, etc., after the death of himself and wife, and "to the parties entitled to receive the same, by his will." Its obvious intent, however, was to provide for payment of the interest to Godshalk and wife, during life, and for the disposition of the principal by his will. The right to make this disposition is not taken away by the deed. That instrument provides for payment "to the legal heirs" of Godshalk, with the alternative provision, "or to those legally entitled to the same." Had Godshalk intended payment to his heirs in any event, the

latter provision would have been superfluous, and wholly without meaning. But it has a very evident purpose. It plainly points to others who might become entitled to the money, and can be understood only as referring to the provision of the bond requiring payment " to the parties entitled to receive the same by his will."

Reading the deed in connection with the bond,—which, as the principal debt, is to govern its construction,—it is clear that Godshalk intended to retain dominion over the fund so far, at least, as to enable him to dispose of it by will. This dominion, expressly provided for in the bond, is in effect reserved in the deed, since " the parties entitled to receive the same by his will " would be " those legally entitled to the same " under the alternative distribution directed in the deed. The effect is but a provisional gift to his heirs : a gift subject to an implied power to vest the title in others by will. The designation, in the receipt at the foot of the deed, of the money charged on the land as a " dower fund," has no definite meaning, and is wholly without bearing on the construction of the deed.

The decree of the court below is affirmed.