## ARTISTI-KOTE CO. v. BENEFACTOR BUILDING & LOAN ASS'N.

### No. 4929.

Circuit Court of Appeals, Third Circuit.
March 21, 1933.

George F. Beechwood, of Philadelphia, Pa., for appellant.

L. Halpern Miller, of Philadelphia, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge.

In July, 1927, Robert H. Scroggins, a citizen of Pennsylvania, executed and deliv-ered to the Benefactor Building and Loan Association, a corporation of Pennsylvania, his bond for $110,000, and also his mortgage for the same amount, secured upon an apart-ment house situated in Pennsylvania, sub-ject to a prior mortgage for $225,000. Si-multaneously with the delivery of the bond and mortgage Scroggins subscribed for and assigned to the loan association 550 shares of its stock as additional collateral security, pursuant to the familiar theory on which building and loan associations operate that payments of installments and credits of earn-ings upon the stock will in time equal and re-pay the loan. Later, Scroggins sold and conveyed the apartment house subject to both mortgages and transferred to the grantee all his right, title and interest in the pledged shares of stock which, through other trans-fers, eventually reached the plaintiff. They then had a value of about $25,000.

By November, 1930, times had changed and with them had changed the values and returns in what, at the beginning, appeared to be a safe transaction for both borrower and lender. After default of interest the loan association obtained judgment on its second mortgage for about $149,000, issued execution and at sheriff's sale purchased the property for $100, subject to the first mort-gage. Thereupon, the last assignee of the pledged 550 shares of loan association stock filed a bill in the District Court alleging that the mortgaged premises were at the time of the sheriff's sale worth $500,000; that the loan association, in purchasing the property for $100 when only $335,000 of principal mortgage indebtedness stood against it, was paid in full and that, in consequence, it could not in law appropriate the shares pledged as additional collateral but should in equity be required to hand them over to the plaintiff-assignee. The learned trial court, after an-swer but before hearing, resorted to Equity Rule 29 (28 USCA § 723) which gave it pow-er to call up and dispose of any question of law "going to the whole or a material part of the cause of action," and dismissed the bill. The plaintiff appealed.

We are disposed to pass by the doubtful question of jurisdiction, raised by the de-fendant, in order to bring to an end a con-troversy in which, though aggravated by in-dustrial conditions, we discern no doubt in law.

The appellant's first grievance is that the trial court, at a hearing similar to one on de-murrer, erred in refusing to accept as true its allegation that the mortgaged premises

were at the time of sale worth $500,000. It contends that, had this fact been assumed or admitted, the court would have been forced to action opposite that which it took.

It is very plain that a recognition of this allegation is the basis of and therefore is essential to the appellant's theory of its right to the shares in question; but we regard its admission or assumption in no sense necessary to a decision of the case under what the learned trial court ruled, and we shall decide, is the applicable law.

▮ As the obligations in question are Pennsylvania contracts and the properties to which they refer are from their location or situs Pennsylvania properties, the case clearly turns on Pennsylvania law. We shall, therefore, look for the law of Pennsylvania in respect to a debt whose payment is secured by a bond and mortgage and by additional collateral of the character shown by the amended bill (Exhibit A).

▮ Under the law of that state, a mortgage is not a conditional deed or a defeasible conveyance. Though of high grade, it is simply a security for the payment of the amount due on the bond. The bond is the primary obligation and stands for the principal debt; the mortgage is collateral security. Eagle Beneficial Society's Appeal, 75 Pa. 226; In re Davis (C. C. A.) 174 F. 556, 557. Therefore the mortgage, being merely a security for payment of the debt evidenced by the bond, confers upon the mortgagee nothing more than a lien upon the land described. Commonwealth v. Wilson, 34 Pa. 67. Yet both bond and mortgage concern in different ways the same debt. In consequence, satisfaction of the bond extinguishes the debt and discharges the mortgage. Hodgdon v. Naglee, 5 Watts & S. (Pa.) 217; Tubb's Appeal, 161 Pa. 254, 28 A. 1109; Neale v. Dempster, 179 Pa. 569, 576, 577, 36 A. 338. Sale of the land under foreclosure proceedings satisfies or extinguishes the mortgage and discharges the land of its lien, Neale v. Dempster, 179 Pa. 569, 576, 577, 36 A. 338, In re Davis (C. C. A.) 174 F. 556, 559, and reduces the debt on the bond by the amount of the purchase price, but, being only a satisfaction of the debt pro tanto, Weightman v. Union Trust Company, 208 Pa. 449, 452, 57 A. 879, such a sale leaves the bond, if still outstanding, as an obligation for the balance of the debt. It is clear under the law of Pennsylvania that after sale under a judgment on a mortgage, which is a resort to collateral security, the personal liability of the debtor remains on the bond for the unpaid balance, even though the mortgagee be the purchaser at the sale. Mollenauer v. Smith, 51 Pa. Super. Ct. 517; Wolfe's Appeal, 110 Pa. 126, 20 A. 410. For payment of that part of the debt remaining due after recourse to the mortgage security, the holder of the bond may resort generally to other property of the debtor and particularly to security he has pledged therefor, Newhoff v. Rochester, 66 Pa. Super. Ct. 297, unless, as the appellant here claims, the mortgagee, when bidding in the property at foreclosure sale for less than the debt, has received in moneys worth, according to the value of the property, the full amount of his debt, in which case the debt represented by the bond has in fact been paid. To establish this fact the appellant relies on its averment in the bill that the property was worth $500,000 and seeks opportunity to prove it, citing In re Davis (C. C. A.) 174 F. 556. That case, decided by this court, ruled that evidence of the value of property purchased at foreclosure sale should be received and considered in determining whether or not the debt had been paid by the foreclosure. But that case was, quite properly, distinguished from the Pennsylvania rule by a Pennsylvania court in Bugh's Estate, 95 Pa. Super. Ct. 29, on a showing that what this court was doing in the Davis Case was administering the Bankruptcy Act and what it was dealing with was a claim of a secured creditor against the estate of a bankrupt mortgagor, probably under section 57e and 57h of the act, 11 USCA § 93(e, h). Other cases on which the appellant relies are also under the Bankruptcy Act and may for that reason be distinguished. In re McAusland (D. C.) 235 F. 173, 189; In re Thompson (D. C.) 276 F. 313; Id. (C. C. A.) 284 F. 65, 73; In re Soltmann (D. C.) 238 F. 241, 244; In re Morgan (D. C.) 39 F.(2d) 489, 491.

▮ In the instant case the District Court was dealing with a transaction not under the Federal rule applicable to proof of claims of secured creditors in bankruptcy but under the Pennsylvania rule which we gather from the authorities is to the effect, hard as the consequences may sometimes be, that the sum for which a property is bought at a mortgage foreclosure is, save in exceptional circumstances, conclusive as to its value with respect to legal rights of the mortgagee and pledgee as against the mortgagor and pledgor. Bugh's Estate, 95 Pa. Super. Ct. 29; Newhoff v. Rochester, 66 Pa. Super. Ct. 297; Mollenauer v. Smith, 51 Pa. Super. Ct. 517; Lomison v. Faust, 145 Pa. 8, 23 A. 377. It follows that the loan association,

pledgee in this case, which is seeking nothing more than recovery of its loan, as evidenced by its unaccepted offer to surrender the stock on payment of what is due it less a substantial reduction, is as free to resort to and appropriate the shares of stock pledged as collateral security in discharge of the debt remaining due (which on its face exceeds the value of the shares) as it was to resort to the property mortgaged as collateral security.

The decree of the District Court dismissing the amended bill is affirmed.