# Wolfe's Appeal.

1. Where a vendor sells the equitable interest of his vendee by virtue of a lien upon the same, he rescinds his contract and thereby precludes himself from a personal recourse to the vendee for the unpaid purchase money, but this rule does not apply where the sale is executed and the legal title is in the vendee.

2. B. executed a mortgage to A. for the purchase money of an oil-lease, payable in instalments.   B. died intestate and insolvent, leaving several instalments unpaid.   A. issued a scire facias on his mortgage, obtained judgment and levied on the leasehold.   It was sold by the sheriff, A. becoming the purchaser, leaving a balance of the purchase money unpaid.   Before the Auditor appointed to distribute the funds in the hands of B.'s administrator among his creditors, A. testified that at the time he took the mortgage, he gave (he thought) a bill of sale or other paper, transferring his title to B.   No such paper was recorded. The Auditor rejected A.'s claim for the balance due him, holding that B.'s interest being an equitable one, A. had rescinded the original contract by his purchase at the sheriff's sale and he could not come in for a pro rata share of the fund:

*Held,* that the evidence showed an executed contract between A. and B. whereby the legal title passed to B. and that A.'s failure to realize his entire claim, by a sale of the mortgaged premises did not extinguish his right to pursue the estate of his deceased debtor for the unpaid residue.

May 11th, 1885.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN JJ.   CLARK, J., absent.

APPEAL from the Orphans' Court of *McKean county:*   Of July Term 1884, No. 146.

This was an appeal by J. D. Wolfe from a decree of said court dismissing exceptions to and confirming the report of an Auditor, appointed to make distribution of the funds in the hands of the administrator of Victor C. Wright, deceased.

The facts, as found by the Auditor (John Forrest, Esq.), were substantially as follows:   Victor C. Wright died intestate on September 2d, 1881; his administrator filed his account showing a balance, after payment of preferred debts, of

$2,687.30. This account was confirmed and an Auditor was appointed to distribute this balance among Wright's creditors. The Auditor found the estate to be insolvent. J. D. Wolfe presented a claim before him for a balance due him on certain promissory notes, given by Wright, for the purchase money of a certain leasehold interest in ten acres of land in McKean county together with two oil wells, machinery fixtures, tools, etc. These notes were secured by a mortgage on the said leasehold for $4,668.75, dated February 23d, 1881, which was duly recorded. Wolfe testified that at the time he took said mortgage, he gave (he thought) a bill of sale or other paper transferring his title to Wright, but there was no title of record from Wolfe to Wright for said leasehold. The notes, for which said mortgage was given as security, were six in number and bore even date with said mortgage. At the time of Wright's death, three of these notes, amounting with interest to $3,081.02, were unpaid; as they fell due they were protested for non-payment. Wolfe then issued a scire facias on the said mortgage, caused the property to be sold by the sheriff, bought in the property himself and receipted for the proceeds of the sale upon the writ. This amounted with interest to $1,024.87 and it was the balance still due, viz: $2,056.15, that constituted the present claim.

The Auditor found from the above state of facts that Wolfe, by becoming the purchaser of the mortgagor's equitable interest at the sheriff's sale, had rescinded the contract with Wright and could not come in on the funds in his hands for distribution.

Wolfe filed, inter alia, the following exception to this report:

"1st. The Auditor erred in failing to report that J. D. Wolfe had made an absolute assignment or transfer of his legal title to the leasehold estate for which a leasehold mortgage was given to secure purchase money; and that J. D. Wolfe having failed to realize the full amount of his claim from a sale of the mortgaged premises, was entitled to recover the balance of his claim against the estate."

The court overruled the exception and confirmed the report of the Auditor. Wolfe then took this appeal, assigning for error the action of the court.

*M. F. Elliott* and *Edward McSweeney*, for appellant.—This appeal raises the naked question whether or not one who is the owner of a leasehold for oil purposes, and who transfers or assigns his legal title thereto for a valuable consideration, taking a mortgage thereon to secure notes given for purchase money, is precluded and estopped from recovering the balance of his claim on the notes, simply because he recovers judgment

on his mortgage against the vendee and sells the leasehold by virtue of a *levari facias* for an amount less than the mortgage debt.

This is a question which we submit has never been determined by the Supreme Court of this state, although the principle has been clearly established in a number of cases, that when a vendor sells the equitable interest of his vendee in the property conveyed, that he thereby rescinds the contract and precludes himself from a personal recourse to the vendee for the balance of purchase money unpaid. But when the legal title has been conveyed to the vendee, the contract is completely comsummated, and the term rescission is inapplicable. The burden was on the objectors to show that the legal title had been retained by Wolfe, and that he had divested himself of the right to proceed further for unpaid purchase money by his own act. Wolfe had a perfect right to rely on his claim for the notes due, and was entitled to his pro rata share of the fund for distribution in the absence of affirmative evidence that he had done some act amounting in law to an estoppel. From the nature of the transaction, it is more reasonable to suppose that Wolfe assigned his legal title to the leasehold than that he retained by executory stipulation any legal title thereto at the time when he took the mortgage for purchase money.

The evidence, as reported by the Auditor, would not justify the conclusion that Wolfe retained a legal title and conveyed only an equitable interest to Wright.

*Robert H. Rose* (*David Sterrett* with him), for appellees.—In this case the vendor, by enforcing the collection of the purchase money, had in effect rescinded the contract. He cannot afterwards claim pay for that which he has taken back after receiving a large portion of the purchase money.

The Auditor found from the evidence before him, that the title of Wright in the leasehold sold by the appellant was an equitable one and that the contract between Wolfe and Wright was virtually rescinded by the sale under the mortgage, and that Wolfe had no valid claim on the personal assets in the hands of the administrator. And we urge that the Auditor was justified in so finding. No deed was on record for the property; no evidence of the delivery of one was produced before the Auditor; and whatever title passed from Wolfe to Wright at time of sale was contemporaneously reconveyed to Wolfe as security for the purchase money.

Mr. Justice STERRETT delivered the opinion of the court, May 25th, 1885.

We gather from the Auditor's report, that in February 1881, appellant sold and assigned to Victor C. Wright, appellee's intestate, a mining lease, known, in business circles, as an "oil lease," together with machinery, fixtures, engines, tools &c., on the premises; and, for part of the purchase money received from Wright six promissory notes, aggregating over $4,500, secured by a leasehold mortgage of the mining lease, machinery, &c., vested in him by virtue of the assignment. In other words, Wolfe sold and transferred his interest in certain real estate and took from his vendee a mortgage thereof for residue of purchase money. In the absence of any evidence to the contrary, it must be assumed that Wolfe transferred all the interest he had in the land, machinery, &c., embraced in the lease, and that the only security he had for the consideration money was the notes and mortgage of the lease, etc. There is not a particle of testimony tending to show anything else than that the contract was an executed and not an executory one. The case differs widely from the ordinary sale on articles of agreement in which the vendee acquires merely an equitable interest in the land—a right to a conveyance of the legal title upon paying or securing, as may be agreed upon, the residue of purchase money. In the meantime the vendor retains the legal title as security for the unpaid purchase money; and, if on a lien therefor, he sells and purchases the equitable interest of his vendee, the contract is thereby rescinded and he is precluded from recourse to the vendee personally for the balance of purchase money that may not be paid by the proceeds of sale. This principle, applicable to executory contracts for the sale of lands is recognized in many of our cases, as far back at least as Purviance v. Lemmon, 16 S. & R., 292, among which are, Love v. Jones, 4 Watts, 465; Horbach v. Reiley, 7 Barr, 81; Vierheller's Appeal, 12 Harris, 105; Bradley v. O'Donnell et al., 8 Casey, 279; P. & S. Railroad Co. v. Jones, 9 P. F. S., 433; Zeigler, Baker & Co.'s Appeal, 19 P. F. S., 471. In McCay v. Orr, 11 W. N. C., 524, the same principle was applied to an executory contract for sale of personal property. The authorities above cited, and others that might be added, firmly establish the principle, that while the legal estate of the vendor and the equitable estate of the vendee may each be the subject of levy and sale by their respective creditors without affecting the other, a sale by the vendor for unpaid purchase money passes the whole estate; and, as was said in Bradley v. O'Donnell, *supra*, the "re-union of the equitable with the legal estate is virtually a rescission of the contract." This is always the case when the vendor himself becomes purchaser.

In this case, as has been heretofore observed, the assign-

14 OUTERBRIDGE— 9

[Barclay *v.* Kerr.]

ment was not an executory but an executed contract. An absolute transfer of the lease was made by appellant. He reserved to himself no interest therein. The mortgage he took was his only security. Having exhausted that without realizing the full amount of his claim, he has a right of recourse against the estate of his debtor for the residue. The learned Auditor and court below, failing to note the distinction that has always been observed between executed and executory contracts, refused to let him participate in the distribution.

In this we think there was error. The failure to realize his entire claim by sale of the mortgaged premises, did not extinguish his right to collect, if he could, the unpaid residue. As to that, he has a right to pursue the estate of his deceased debtor.

> Decree reversed at costs of appellees and record remitted with instructions to distribute the fund among the parties entitled thereto, including appellant.